**SPEAKMAN COMPANY, Plaintiff,**

v.

**SLOAN VALVE COMPANY, Defendant.**
**Civ. A. No. 24180.**

United States District Court
E. D. Pennsylvania, at Philadelphia.
Sept. 3, 1958.

---

James A. Moore, Philadelphia, Pa., B. D. Watts, Cleveland, Ohio, and J. P. Wetherill, Washington, D. C., for plaintiff.

James C. McConnon, Paul & Paul, Philadelphia, Pa., and Parker & Carter, Chicago, Ill., for defendant.

LEAHY, District Judge.

This is a declaratory judgment patent suit under 28 U.S.C.A. §§ 2201, 2202 that plaintiff does not infringe defendant's patents Filliung No. 2,663,309 and Krause No. 2,746,477. Defendant filed a counterclaim eliminating any charge of infringement of '309 and moved for a voluntary dismissal with prejudice as to that patent but charged infringement as to '477. An order will be entered as to dismissal of '309. Plaintiff moved for summary judgment of non-infringement of '477. The issue of validity has not been raised by either party. Defendant has, however, filed with its counterclaim a motion for summary judgment that plaintiff has infringed Krause '477, particularly Claims 1 and 2.

The device in suit is known in the plumbing trade as a vacuum breaker. This is a sanitary device for preventing contamination of pure water supply lines. These breakers are used to flush valves in water closets. They permit entry of air into the water supply line where a vacuum condition develops within the line to prevent reverse flow of contaminated material in the line. The function of a breaker is to 1. present a minimum restriction to the normal flow of water through the inlet supply line to the water closet, thus helping to reduce an adverse condition called back pressure; 2. the breaker must provide a seal against the escape of water through the air ports, thus preventing leakage; 3. the breaker must act as a seal to prevent back siphonage of contaminated material in the water closet. The specific operation of the vacuum breaker of Krause '477 is described in Exhibit D of defendant's counterclaim (pp. 2–5).

1. Rule 56 of the Federal Rules of Civil Procedure, 28 U.S.C.A., authorizes the granting or denying of a motion for summary judgment of infringement. Montmarquet v. Johnson & Johnson, D.C.N.J., 82 F.Supp. 469, affirmed 3 Cir., 179 F.2d 240, certiorari denied 339 U.S. 979, 70 S.Ct. 1025, 94 L.Ed. 1384; Smith v. General Foundry Machine Co., 4 Cir., 174 F.2d 147; Steigleder v. Eberhard Faber Pencil Co., 1 Cir., 176 F.2d 604; Vacheron and Constantin-Le Coultre Watches, Inc., v. Benrus Watch Company, Inc., D.C.S.D.N. Y., 155 F.Supp. 932. Here, the device is comparatively simple and from a comparison of the devices and the claims there is sufficient to decide whether the accused device infringes, when construed in the light of the history of the elements involved.

2. Plaintiff's position is this: '477's file wrapper shows two modifications. In Figs. 1 and 2 the flow director is an inverted cup 19 with its upper end riveted to the supporting plate 21. Modification of Fig. 3 shows the flow director is a rigid flat disc 30 across the flexible sleeve adjacent to the thin lip 31 at the end of the flexible sleeve and connected by an axially disposed stem 29 to the supporting plate 21. Plaintiff points to Ex. 4 and 6 to show what occurred during prosecution in the Patent Office. The original claims were generic to the modifications shown in Figs. 1, 2, 3 and 4. The generic claims were rejected. The applicant was required to elect a single species, i. e., "the modification of their invention as exemplified in Figs. 3 and 4 of the drawings and specifically claimed in claims 8, 9, 10 and 11." They urged claims 8 and 9 as "These claims call for a rigid disc traversely disposed across the lower end of the flexible sleeve and closing the opening therethrough." The generic claims were cancelled as well as the claims specific to Figs. 1 and 2. Thus, Claims 8 and 9 were restricted by the modifications shown in Figs. 3 and 4 and there was excluded from the scope of the claims the modification of Figs. 1 and 2 which had no rigid disc but an inverted cup. Ex. 4, 6 and 8 show during prosecution restrictions to Figs. 3 and 4 by including two further limitations. Plaintiff argues a comparison of Fig. 1 with the drawing of its accused vacuum breaker (Ex. 6) shows plaintiff's device lacks both of the two limitations.

3. Defendant in support of its charge of infringement relies on the doctrine of equivalents. But, before that defendant bases infringement on the theory plaintiff's vacuum breaker comes within the claims of '477 and is a functional infringement of the patent. If the vacuum breaker does not come within the claims, there is still infringement under the doctrine of equivalents, says defendant. It argues the flow director of the accused structure is the functional and mechanical equivalent of the flow director of '477; and this applies to the inwardly projecting lip of both structures. Krause '477 has specific and narrow claims which live in an old and crowded art and while he is still entitled to a reasonable range of equivalents, Art Metal Works, Inc., v. Abraham & Straus, Inc., 2 Cir., 107 F.2d 940; Nachman Spring-Filled Corporation v. Kay Mfg. Co., 2 Cir., 139 F.2d 781, there still remains plaintiff's defense against infringement 1. the flexible sleeve in the accused structure does not have a lip thinner than the sleeve; and 2. the accused structure is the same as the structure shown in Fig. 1 which was abandoned in the Patent Office when defendant was required to make an election of species.

4. Where a patentee narrows his broad claims by limitations he cannot escape those limitations by treating equivalents. Dow Chemical v. Skinner, 6 Cir., 197 F.2d 807; Smith v. Magic City Kennel Club, 282 U.S. 784, 789–790, 51 S.Ct. 291, 75 L.Ed. 707. Cf. Elevator Supplies Co., Inc., v. Graham & Norton Co., 3 Cir., 44 F.2d 358, 359. It has been specifically decided the doctrine of file wrapper estoppel supersedes that of equivalents, because its existence protects an accused who otherwise might be guilty of an infringement. See Lewis v. Avco, 7 Cir., 228 F.2d 919, 923–25, and Exhibit Supply Co. v. Ace Patents Corp., 315 U.S. 126.

The most recent decision is Carter Products, Inc. v. Colgate-Palmolive Co., D.C., 164 F.Supp. 503, where Judge Thompsen wrote: "Plaintiffs next argue that file wrapper estoppel should not operate as a bar in this case unless it is shown that the prior art precludes the expansion of their claims. However, in applying the doctrine of file wrapper estoppel it is immaterial whether the examiner's rejection of the amended claim was right or wrong. Exhibit Supply Co. v. Ace Patents Corp., supra [315 U.S. 126, 62 S.Ct. 513, 86 L.Ed. 736]. The patentee is estopped not because of the prior art but because of his acquiescense in the examiner's position as to what the prior art permitted. 'If dissatisfied with the rejection, he should

pursue his remedy by appeal; and wherein order to get his patent, he accepts one with a narrower claim, he is bound by it.' I. T. S. Rubber Co. v. Essex Rubber, 272 U.S. 429, 443, 47 S.Ct. 136, 141, 71 L.Ed. 335. In the instant case, therefore, the important question is not what the prior art in fact forbade, but the examiner's position as to what it forbade."

After discussing the amendments made by the patentee to obtain his patent Judge Thompsen said: "Such amendments, following the rejection of general claims, are conclusive, especially where their narrowing effect is emphasized by the applicants themselves. Union Carbide & Carbon Corp. v. Graver Tank & Mfg. Co., 7 Cir., 196 F.2d 103, 109." The accused structure of plaintiff has been placed and read upon the claims of the patent and it does not infringe. The defense of equivalents is rejected.

Plaintiff's motion for summary judgment will be granted, defendant's similar motion will be denied.